Argued and submitted January 16, reversed and remanded with instructions to accept claim October 7, 1987

In the Matter of the Compensation of
Vernon D. Kelso, Claimant.

KELSO,
*Petitioner,*

*v.*

CITY OF SALEM,
*Respondent.*

(83-10281; CA A38731)

743 P2d 772

David C. Force, Eugene, argued the cause and filed the brief for petitioner.

Paul J. De Muniz, Salem, argued the cause for respondent. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Claimant seeks review of an order of the Workers' Compensation Board which affirmed the referee's denial of payment for medical expenses and an aggravation claim.[1] We reverse.

Claimant, a police officer, sustained a compensable injury to his right shoulder in 1979. He had two surgeries and, in 1982, was determined to have a permanent partial disability equal to 15 percent. On July 14, 1983, while making an arrest, his right shoulder froze for about 30 seconds. The following day he saw Dr. Gallagher, the physician who had previously treated him. The chart notes show that claimant had returned for the "same problem" but that Gallagher was not certain what was causing the problem and referred him to Dr. Schwarz for a neurological evaluation.

In July, Schwarz diagnosed amyotrophic lateral sclerosis (ALS), commonly known as "Lou Gehrig's disease." Claimant then went to Oregon Health Sciences Center where he saw Dr. Hammerstad, who referred him to Dr. Engel, a specialist in ALS at the University of California School of Medicine. Hammerstad's referral letter states that he could not make a determination whether or not claimant had ALS. After an examination, in February, 1984, Engel gave a diagnosis of possible ALS but said that the cause of the upper extremity paresthesias was undetermined. Engel explained the diagnosis in a follow-up letter to claimant:

"The abnormality of sensation in your right upper extremity is not part of ALS. We did the myelogram and could not find a cause for that. Therefore it remains unexplained. Whether it is in some way due to the shoulder injury remains possible but uncertain at this time."

Claimant was also seen by Dr. Tiley, an orthopedic surgeon. In his initial analysis of the case, Tiley, relying on Schwarz' opinion that claimant had ALS, concluded that the impairment of the right shoulder was one of atrophy of musculature most likely caused by ALS. After reviewing results of the consultation by Engel, Tiley changed his opinion. He noted that the "experts in ALS * * * discount that any of the shoulder problem is related to [claimant's] neurologic process"

---

[1] Employer issued three denials from which claimant sought review. All involve the same issues.

and concluded that the shoulder problem was mechanical. At the hearing, the referee concluded that claimant had not met his burden, because Tiley was not knowledgeable regarding claimant's condition in 1982 and because his premises were disputed by Schwarz, who was "more persuasive" about ALS. The Board affirmed. On *de novo* review, we disagree.

The medical evidence is conflicting and somewhat difficult to evaluate. Gallagher, who treated claimant for his previous injury, noted initially that he had returned for the "same problem," but he was unsure what was causing the problem and referred him to a neurologist. Gallagher expressed a willingness to defer to the experts on ALS,[2] but he did testify at the hearing that the shoulder problems were not related to the earlier injury. Hammerstad made a diagnosis of possible ALS. Schwarz diagnosed claimant's shoulder problem as ALS. However, the conclusion of Engel, a recognized expert, that claimant's shoulder problem was not related to ALS, was in direct conflict with Schwarz's opinion. After reviewing Engel's report, Tiley concluded that the current shoulder problems were attributable to claimant's injury and surgeries.

We conclude that claimant's shoulder problems were related to his injury. The opinions of Engel and Tiley are the most persuasive. Respondent argues that Tiley's conclusions were not reliable, because he changed his opinion. There was a reasonable explanation for changing his opinion. His initial conclusion that the shoulder disability was related to ALS was based in significant part on his deference to the ALS experts. He did not have Engel's report when he gave his initial opinion. After reviewing that report, which concluded that claimant's shoulder problem is not related to ALS, he relied on his own orthopedic expertise and concluded that the source of claimant's problems is mechanical. Claimant's medical expenses relating to his shoulder are part of his compensable injury.[3]

---

[2] In January, 1984, Dr. Gallagher stated in a chart note:

"I have told [claimant] that if the ALS experts are willing to say that there are two separate problems and one of the problems is related to his shoulder and previous surgery and injury, then I would also be willing to say that."

[3] Claimant also argues that a medical report generated over a month after hearing should be added to the record. The Board declined to remand for reconsideration of the

We also conclude that claimant has established an aggravation of that injury. Gallagher's chart notes from his closing examination in April, 1982, show that claimant had cramping, right shoulder pain but no muscle atrophy. His July, 1983, report notes that claimant has continued pain, cramping and freezing of the arm. The examination also revealed a loss of deltoid muscle. Tiley diagnosed muscle atrophy. Claimant has shown a worsening of his compensable condition since the last arrangement of compensation.

Reversed and remanded with instructions to accept the claim.

---

report, and we deny claimant's motion to supplement the record. Claimant did not demonstrate that the report was not obtainable at the time of hearing. *See Compton v. Weyerhaeuser,* 301 Or 641, 724 P2d 814 (1986).